**PITTSBURGH HOTELS ASSOCIATION, INC.,** a Pennsylvania Corporation, Carlton Hotel Corporation, a Pennsylvania Corporation, Hilton Hotels Corporation, a Delaware Corporation, Allegheny Hotel Corporation, a Pennsylvania Corporation, Pittsburgher Hotel Company, a Pennsylvania Corporation, and Sheraton Mid-Continent Corporation, a Delaware Corporation, Plaintiffs,

v.

The **URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH,** a Pennsylvania corporation, and Leon Falk, Jr., Joseph S. Wohl and Golden Triangle Motor Hotel, Inc., a Pennsylvania corporation, and the City of Pittsburgh, Pennsylvania, Defendants.

Civ. A. No. 61–442.

United States District Court
W. D. Pennsylvania.

Feb. 14, 1962.

D. Malcolm Anderson, Charles R. Burke, of McCann, Garland, Ridall & Burke, Pittsburgh, Pa., for plaintiffs.

Louis Caplan, Earl F. Reed, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendants Leon Falk, Jr., Joseph S. Wohl and Golden Triangle Motor Hotel, Inc.

Theodore L. Hazlett, Jr., Pittsburgh, Pa., for defendant Urban Redevelopment Authority.

David W. Craig, City Sol., Pittsburgh, Pa., for defendant City of Pittsburgh.

Lord, Day & Lord, by Charles W. Merritt, New York City, attorneys for American Hotel Ass'n, filed brief amicus curiae.

MARSH, District Judge.

The plaintiff hotel corporations bring this action to enjoin the defendants, Golden Triangle Motor Hotel, Inc. and Falk and Wohl, its organizers and principal stockholders, from erecting, maintaining and operating a hotel or transient housing facilities on a parcel of land (Parcel "B")[1] in Pittsburgh owned by the Urban Redevelopment Authority of Pittsburgh (Authority).[2]

The action arises under the laws of the United States: Title I of The Housing Act of 1949, entitled Slum Clearance and Community Development and Redevelopment,[3] as amended through September, 1959.[4]

Without answering the complaint defendants moved for summary judgment with a supporting affidavit (first Hazlett affidavit). After the hearing on the motion defendants filed another supporting affidavit (second Hazlett affidavit); thereupon the plaintiffs examined the files and records of the Authority, took and submitted the deposition of Robert B. Pease, Executive Director of the Authority, taken as on cross-examination, and served a Request for Admissions to which defendants have responded as directed by order of court.

It is the opinion of the court that the rights of defendants are fixed by statutes, contracts, and supplemental documents; that the complaint, deposition, admissions, and affidavits clearly show that there is no genuine issue as to any

1. See map of Parcel "B" in the proposed Land Disposition Contract at Schedule "B" (plaintiffs' Ex. 10–B). The Parcel is also substantially shown as Parcel "A" on the maps attached to the Redevelopment Area Plan (Ex. B) and marked Exs. B, B–1, and B–2.

2. This Authority was established under the Urban Redevelopment Law of Pennsylvania, Act of May 24, 1945, P.L. 991, 35 Purdon's Pa.Stat.Ann. § 1701, as amended.

3. Act of July 15, 1949, 63 Stat. 413, Title I, p. 414.

4. The Housing Act of 1949 has been repeatedly amended: the amendments pertinent to this action are the Housing Act of 1954, approved August 2, 1954, 68 Stat. 622, 42 U.S.C.A. § 1450, particularly § 312 thereof, 68 Stat. 629, 42 U.S.C.A. § 1450 note; and subsection (g) of § 410 of the Housing Act of 1959, approved September 23, 1959, 73 Stat. 674, 42 U.S.C.A. § 1456(g) (1961 Supp.).

material fact; and that the defendants are entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., 28 U.S. C.A.

[2] In arriving at these conclusions, we take as true all the well-pleaded facts contained in the complaint, as well as the admissions on file, giving to plaintiffs the benefit of all reasonable inferences to be drawn therefrom. Bragen v. Hudson County News Company, 278 F.2d 615, 617 (3d Cir. 1960); United States v. St. Paul-Mercury Indemnity Co., 194 F.2d 68, 72 (3d Cir. 1952). So taken we do not think they disclose a cause of action on which relief can be granted, for if all of the alleged and admitted facts were offered in evidence and proved at trial, a judgment would have to be directed in favor of defendants. Shipley v. The Ohio National Life Ins. Co., 296 F.2d 728 (3d Cir. 1961); Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399, 405 (2d Cir. 1945), citing Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967; Moore's Federal Practice and Procedure, ¶ 56.15[1], p. 2107, ¶ 56.-15[3], p. 2128, ¶ 56.15[8], p. 2165.

■ Simply because defendants filed objections to certain of plaintiffs' Request for Admissions does not show, as plaintiffs contend, that there are genuine issues of material fact which would preclude summary judgment. Objections were sustained to 19 Requests because plaintiffs wanted defendants to agree to certain opinions, conclusions, conjectures,

and interpretations which the plaintiffs placed upon certain documents, letters, plans and statutes. See opinion and order filed January 5, 1962. Should defendants be deemed to dispute these opinions, conclusions, conjectures, and interpretations, such disputes would involve issues of law rather than issues of fact.[5]

■ The two affidavits filed by defendants do not attempt to dispute any material fact alleged in the complaint but merely provide the contractual and documentary background of the litigation. And, of course, the court is not required to accept as true the conclusions of law contained in the complaint, e. g., ¶¶ 28, 29. (Paragraph references are to paragraphs of the complaint herein.) Delaware, Lackawanna and Western R. Co. v. Kingsley, 189 F.Supp. 39 (D.N.J.1960); Moore's Federal Practice and Procedure, ¶ 56.15[3], p. 2131.

The facts thus disclosed appear to be as follows: Pursuant to Title I of the Housing Act of 1949, on January 3, 1952, the Authority entered into a "Contract for Advance" with the Government for surveys and plans in preparation of a project known as the Lower Hill Redevelopment Project, Redevelopment Area No. 3 (attached to the second Hazlett affidavit and marked Ex. A). On February 21, 1955, pursuant to § 312 of the Housing Act of 1954, 68 Stat. 629,[6] the Authority adopted a Resolution formally requesting that the Administrator of Housing and Home Finance Agency (HHFA) "continue said project under

---

5. For example, plaintiffs contend that the "intent" of Congress in enacting § 410 of the Housing Act of 1959, 73 Stat. 674, § 1456(g) of Title 42 U.S.C.A. (1961 Supp.) (quoted infra), is a disputed issue of fact, and for that reason summary judgment should be denied. (Tr., p. 111; p. 1 of Memorandum Brief of Plaintiffs dated Dec. 1, 1961.) We think that the intent of Congress with respect to this statute is a question of law, Cory Corporation v. Sauber, 266 F.2d 58 (7th Cir. 1959); Woods v. Petchell, 175 F.2d 202 (8th Cir. 1949); 82 C.J.S. Statutes § 312; cf. Watkins v. National Electric Products Corporation, 165 F.2d 980 (3d Cir. 1948).

6. "SEC. 312. Notwithstanding the amendments of this title to title I of the Housing Act of 1949, as amended, the Administrator, with respect to any project covered by any Federal aid contract executed, or prior approval granted, by him under said title I before the effective date of this Act, upon request of the local public agency, shall continue to extend financial assistance for the completion of such project in accordance with the provisions of said title I in force immediately prior to the effective date of this Act."

the provisions of the Housing Act of 1949 as amended and in effect prior to August 2, 1954".[7] Plaintiffs admit the existence of both these documents (Tr. of hearing of Nov. 17, 1961, pp. 37, 38).

In accordance with Pennsylvania law, the City Planning Commission of the City of Pittsburgh prepared and recommended to the Authority a Redevelopment Area Plan for Redevelopment Area No. 3. This area comprises the Lower Hill District adjoining the Central Business District of Pittsburgh; it consisted of 46 city blocks together with access streets, making a total of 105 acres (¶ 15).

The Redevelopment Area Plan,[8] dated June 7, 1955, was promptly approved by the Authority and City Council. On October 11, 1955, a Loan and Grant Contract[9] was executed between the Government and the Authority. In accordance with the aforementioned Resolution adopted by the Authority, the Loan and Grant Contract specifically stated that it was executed for the purpose of extending federal financial assistance to the Authority to "carry out a certain slum clearance and urban redevelopment project * * * under Title I of the Housing Act of 1949 as amended *prior to the enactment of the Housing Act of 1954*". (Emphasis supplied.) The existence of these documents is not disputed.

The Loan and Grant Contract approved the Redevelopment Plan and expressly contemplated that amendments to it might be made from time to time. See Part II, Art. I, § 101(B) (3), p. 1.

The estimated cost of acquiring the properties in the Redevelopment Area and of demolition of buildings, etc. was in excess of $18,000,000 (¶ 18). It is undisputed that the grant agreed to by the United States is nearly $9,000,000, by the Commonwealth of Pennsylvania $1,000,000, by the City of Pittsburgh $3,000,000; Authority loans underwritten by the United States are in excess of $14,000,000, about 81% of which has been expended.[10]

The Redevelopment Plan provided for the redevelopment of the various parcels of land in the project area into commercial, cultural, parking and residential uses, and the maps in the Plan show the location of existing, contemplated, and eliminated streets. The land comprising Parcel "B" contains approximately 5.34 acres and was designated for commercial land use purposes in the Plan. Chatham Street, 60 feet wide, intersected the Parcel for a distance of approximately 300 feet (¶ 16).[11]

The Plan specifically provided that a "hotel" was permitted on land designated for commercial use (see Plan, subsection F–2–b(2) (a), p. 14). The portion covered by Chatham Street was to be used as a public thoroughfare and no structure was permitted thereon. The Plan limited the height of any building to be constructed on "the Parcel adjacent to the Liberty Crosstown Thorofare at Fifth Avenue" to "two stories or twenty feet" (see Plan, subsection F–2–b(2) (d), p. 15; ¶ 17). The restricted parcel appears on maps marked Exhibits B–1, and B–2 attached to the Plan, and it is a small triangular piece west of Chatham Street, north of Fifth Avenue, and east of the Crosstown Boulevard (also referred to in the complaint and text of the Plan as Liberty Crosstown Thorofare).

---

7. See second Hazlett affidavit attached to defendants' supplemental brief in support of defendants' motion for summary judgment. This affidavit is accepted by the court after giving plaintiffs an opportunity to oppose same by counter-affidavit.

8. The Redevelopment Area Plan, its two Modifications and the HHFA approvals are marked Ex. B, and accompanied the first Hazlett affidavit.

9. The Loan and Grant Contract and its Amendments are marked Exs. A–1 to A–9, inclusive, and accompanied the first Hazlett affidavit.

10. See first Hazlett affidavit.

11. See Plan, p. 6, and attached maps marked Exs. A, D, and D–1. The maps show that only the southern portion of Chatham Street intersects Parcel "B".

Subsequently, the Plan was modified in several respects and the modifications were approved by the HHFA.[12] Modification No. 1, approved by City Council on March 4, 1957, inter alia, reduced the width of that part of Chatham Street which intersects Parcel "B" from 60 feet to 44 feet (¶ 21). Modification No. 2, approved by City Council on September 27, 1960, entirely removed that part of Chatham Street which intersected Parcel "B" and changed the location of streets abutting or crossing the parcel to the north and west (¶ 22). (See also maps attached to Modification No. 2 and identified as B–2 and D–1.)

On November 1, 1960, individual defendants Wohl and Falk, on behalf of themselves and a company to be organized by them, made an offer to the Authority for a six-month option to enter into a 99-year lease for the purpose of redeveloping Parcel "B" "with an eight-story motor hotel in excess of twenty feet in height." The offer provided for certain rentals and the right to purchase during the term (¶ 23).

The Authority accepted the offer and Falk and Wohl incorporated the Golden Triangle Motor Hotel, Inc. "for the purpose of * * * developing the parcel in question for use as a hotel" (¶¶ 24, 25).

On June 8, 1961, a six-month Option Agreement[13] and Contract for Disposition[14] were executed by the Authority and Golden Triangle Motor Hotel, Inc., pursuant to approval of the City Council on May 22, 1961 (¶ 26).[15]

The Authority has or is about to enter into a contract with the Golden Triangle Motor Hotel, Inc. for the purpose of implementing the offer of Wohl and Falk, i. e., developing Parcel "B" for use as a hotel (¶ 27).

The Option Agreement and the Contract for Disposition, as changed, were approved by City Council on November 13, 1961, and by the Mayor of Pittsburgh on November 21, 1961; and the option was extended to May 23, 1962.[16]

In the Housing Act of 1959, Congress by § 410, 73 Stat. 674, 42 U.S.C.A. § 1456(g) (1961 Supp.), added subsection (g) to the Housing Act of 1949 (¶ 14). This subsection, hereinafter referred to as the 1959 Amendment, provides as follows:

"(g) No provision permitting the new construction of hotels or other housing for transient use in the redevelopment of any urban renewal area under this title shall be included in the urban renewal plan unless the community in which the project is located, under regulations prescribed by the Administrator, has caused to be made a competent independent analysis of the local supply of transient housing and as a result thereof has determined that there exists in the area a need for additional units of such housing."

The City of Pittsburgh and the Authority have not caused to be made an independent analysis of the local supply of transient housing (¶ 28).

The supply of transient housing in Pittsburgh is now ample, and will so remain for some time to come, and, if the proposed hotel is erected, plaintiffs' land and building investments will be injured, placed in financial jeopardy, and may lead to bankruptcy and loss of employment (¶¶ 30, 31, 32).

Thus plaintiffs conclude that the proposed construction of a hotel by the defendants Wohl, Falk and their corporation, Golden Triangle Motor Hotel, Inc., is a violation of the Plan and the 1959 Amendment (¶ 29).

Plaintiffs do not aver in their complaint, or admit,[17] that the Contract for

---

12. Section J–1, p. 24, of the Plan provided for its modification. The HHFA approvals are included in part 4 of Ex. B.

13. Plaintiffs' Ex. 10–A.

14. Plaintiffs' Ex. 10–B.

15. Plaintiffs' Ex. 9.

16. We take judicial notice of Council's action.

17. See Tr. of hearing of Nov. 17, 1961, pp. 17, 34; but see, p. 47 of the Pcase deposition.

Disposition has received final approval of the HHFA Administrator who has the ultimate power to approve or disapprove the construction of the proposed hotel. However, since the court has been assured by counsel for defendants and the Acting Administrator that the Disposition Contract has been in fact approved despite the alleged violations, the complaint will not be dismissed as being premature.

There is no doubt that a federal aid contract was executed prior to August 2, 1954, the effective date of the Housing Act of 1954; [18] that the Authority by appropriate Resolution, as authorized in § 312 of the Act of 1954,[19] requested the Administrator to continue to extend financial assistance for the Lower Hill Redevelopment Project, Redevelopment Area No. 3, in accordance with the provisions of Title I of the Housing Act of 1949 prior to the Housing Act of 1954. The Loan and Grant Contract specifically provided that it was executed "under Title I of the Housing Act of 1949 as amended prior to the enactment of the Housing Act of 1954". In our opinion the Authority and the Government have in their contract, pursuant to Congressional approval (§ 312), a built-in provision which authorizes the completion of the Lower Hill Project No. 3 with federal financial assistance pursuant to Title I of the Housing Act of 1949 *as amended prior to 1954*, and that the subsequent 1959 Amendment is not applicable. Thus the unrestricted right of the Authority to agree with Golden Triangle Motor Hotel, Inc. to erect a hotel on Parcel "B" as provided in the Redevelopment Plan of 1955 has not been limited by the 1959 Amendment; and the competition to which plaintiffs so strenuously object is lawful.

■ In addition, and materially strengthening this conclusion is the prospective construction which we think must be placed upon the 1959 Amendment. The settled rules of statutory construction teach that a law is presumed, in the absence of clear expression to the contrary, to operate prospectively. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938); In re Moneys Deposited, etc., 243 F.2d 443 (3d Cir. 1957).

"Accordingly, it is a usual rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects, and business within their purview and scope *coming into existence subsequent to their passage.*" Vol. 82 C.J.S. Statutes § 319. (Emphasis supplied.)

■ What Congress in explicit language proscribed was a "*provision* permitting the new construction of hotels" being included in an "urban renewal plan" unless an analysis demonstrating a need therefor is made. (Emphasis supplied.) In our opinion by applying the above-stated principle of statutory construction to the 1959 Amendment, it should be construed to operate on new plans submitted for approval and financial aid after the effective date of that Act of 1959, and, perhaps, on a post-1959 modification of an old plan, if said modification contains a new provision permitting new construction of a hotel. The Amendment does not operate retroactively and thus does not affect the provision permitting the new construction of a hotel as contained in the Redevelopment Plan of 1955.

The plaintiffs contend that the proposed construction of a hotel on Parcel "B" is a violation of the 1959 Amendment because subsequent to its effective date, Modification No. 2 eliminating Chatham Street was approved, and the Falk and

---

18. See "Contract for Advance" attached to the second Hazlett affidavit.

19. Section 312 is quoted at f.n. 6; it is a savings provision " * * * to permit * * * the completion * * *

of projects * * * under contract for plans and surveys, prior to * * * [August 2, 1954]." U.S.Code Congressional and Administrative News, 1954, vol. 2, p. 2805.

Wohl Option Agreement and the Contract for Disposition were executed. Consequently, the land formerly designated under the Plan for use as a street will now be put to commercial use, i. e., occupied by a portion of the proposed hotel without the prior independent analysis required by the Amendment. They argue that the Amendment was enacted for their benefit, and therefore they are entitled to have the erection of a hotel on Parcel "B" enjoined. We are constrained to disagree.

The land area which was formerly the southern portion of Chatham Street is minimal, and the Authority, with the approval of Council (section I of the Plan, p. 22), had the power and duty to conform the streets, especially portions of intersecting streets, to meet the requirements of the various commercial redevelopment projects as they arose and were accepted. Section J of the Plan specifically authorized modifications and both modifications were approved by the HHFA. The proposed construction of a hotel on Parcel "B" as amended is the exercise of a contractual right possessed by the Authority for the benefit of the City of Pittsburgh pursuant to the Redevelopment Plan and the Loan and Grant Contract of 1955, which designated that Parcel exclusively for commercial uses including a hotel.

We hold that the 1959 Amendment is not applicable to the 1955 Redevelopment Plan, as modified, to the Loan and Grant Contract, as amended, or to the Disposition Contract between the Authority and the Golden Triangle Motor Hotel, Inc., and, thus, plaintiffs have not stated a claim on which equitable relief can be granted.

■ We agree with plaintiffs' counsel that Congress has the power to regulate federally-financed redevelopment projects and to require independent analysis of the need for transient housing prior to new construction, but our examination of the pertinent legislation prior to the 1959 Amendment has convinced us that Congress did not exercise that power. A Congressional policy precluding the use for transient purposes of housing built with the aid of mortgages insured under the National Housing Act of 1934 (12 U.S.C.A. § 1701) was made crystal clear in 1954 by an addition to that Act (12 U.S.C.A. § 1731b(i) ) authorizing hotel owners to seek injunctions against violations. Thus it appears that Congress was very much aware of that policy, especially in 1954 when it enacted the Housing Act of that year; but, notwithstanding, as revealed by an examination of that Act and the several Housing Acts which followed, it was not until 1959 that Congress actually applied that policy to urban renewal plans and prohibited provisions permitting new construction of hotels and transient housing from being incorporated into such plans thereafter.

With respect to construction of transient housing in redevelopment and renewal areas, it seems that during the period from 1949 to 1959, Congress was content to rely upon the judgment of the Administrator, or his delegates, and the good faith and economic acumen of the public-spirited citizens comprising the public authorities, planning commissions, and the city councils involved. The legislative history, we think, clearly negatives any intent on the part of Congress to make the 1959 Amendment applicable to pre-1959 provisions permitting new construction of hotels and transient housing.

■ Moreover, the Housing Acts were not passed for the benefit of hotels,[20] and if the 1959 Amendment is correctly construed to be prospective, plaintiffs have no standing to maintain this legal attack upon the 1955 Plan and its provision permitting the construction of a ho-

20. We express no opinion on the contention that the 1959 Amendment was passed for the benefit of hotels and that since its enactment they have legal standing to enforce it because, assuming the affirmative to be the case, such standing would be effective only against post-1959 provisions permitting construction of hotels and transient housing.

tel. If plaintiffs and their employees will be financially injured, as they allege, by the prospective lawful competition, such injuries are damnum absque injuria. Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Taft Hotel Corporation v. Housing & Home Finance, 162 F.Supp. 538, 539–540 (D.Conn.1958), aff'd 262 F.2d 307, 308 (2d Cir. 1958); Gart v. Cole, 166 F.Supp. 129 (S.D.N.Y.1958), aff'd 263 F.2d 244 (2d Cir. 1959).

Plaintiffs are not parties to any of the contracts involved. The HHFA which is a party to the Loan and Grant Contract is not a party to this suit. Conceding that plaintiffs could establish all the facts alleged in their complaint at a trial, including the averment that the height restriction contained in the Plan will be violated, and, in addition, (1) that other irregularities and ultra vires acts exist in the manner in which the Governmental agencies propose to dispose of Parcel "B" pursuant to the Redevelopment Plan of 1955; (2) that public hearings required by law were not held; (3) that communications between the Authority and the HHFA Agency should be interpreted as plaintiffs contend; and (4) that irregularities exist in the manner of execution and implementation of the loans authorized by the Loan and Grant Contract; we think that they would not be entitled to relief. Alabama Power Co. v. Ickes, supra, 302 U.S. at pp. 478–483, 58 S.Ct. 300; Gart v. Cole, supra, 263 F.2d at p. 250, Gart v. Cole, supra, 166 F.Supp. at pp. 134–136; Taft Hotel Corporation v. Housing & Home Finance, supra, 262 F.2d at p. 308. In short, we hold that competitors such as the plaintiff-hotels have no standing to complain of irregularities in the manner of execution of the Redevelopment Plan and the Loan and Grant Contract of 1955, their Amendments and Modifications.

An appropriate order granting the motion for summary judgment will be entered.