KLEPINGER *v.* BOARD OF COMM. COUNTY OF MIAMI, ETC.

[No. 767A24. Filed July 26, 1968. Rehearing denied September 9, 1968.
Transfer denied November 4, 1968.]

*Bayliff, Harrigan & Cord,* of Kokomo, by *J. Conrad Maugans,* for appellant.

*Russel J. Wildman,* and *George R. Landgrave, of* Peru, for appellee.

SMITH, J.—This appeal involves an action brought by the appellant, Wayne Klepinger, against the appellee, The Board of Commissioners of the County of Miami, to recover damages for medical care, and loss of services of his wife, and for property damage to his motor vehicle emanating from the operation of his motor vehicle by his wife when she struck an open trench left across a bridge floor, which was being repaired by the appellee, The Board of County Commissioners of Miami County.

The appellant alleged in his complaint that the appellee was negligent in leaving a trench open across the entire width of said bridge throughout the day of April 10, 1966, when the appellee knew, or should have known, that persons in motor vehicles using said highway and bridge could be injured and their motor vehicles damaged when striking said trench; and, in failing to warn approaching motorists that there was an open trench across the bridge.

The appellee filed an answer in affirmation and denial pursuant to Rule 1-3 of the Rules of the Supreme Court of Indiana; and also filed a motion for summary judgment based upon the theory of governmental immunity, the county being uninsured.

Upon the issues thus joined, this cause was submitted to the court for trial. The trial court sustained the appellee's motion for summary judgment and a judgment was rendered accordingly.

Thereafter, the appellant filed a timely motion for a new trial, which motion is as follows:

"1. The decision of the court is contrary to law.

"2. The decision of the court is not sustained by sufficient evidence.

"3. The court erred in sustaining defendants' Motion for summary judgment.

"4. The court erred in its conclusion of law 'that the defendant is entitled to a judgment as a matter of law.'"

In support of the motion for a new trial the appellant filed a memorandum which reads as follows:

"1. The decision of the court is contrary to law in the following particulars:

"a. The court's decision was founded on the erroneous findings that 'the defendant is entitled to a judgment as a matter of law.'

"b. Sovereign immunity is not available as a defense to a county in Indiana when the county's liability is based on negligent acts and omissions of officers, employees or agents committed in performing proprietary or ministerial functions. *Flowers v. Board of Commissioners of the County of Vanderburgh, et al.* (1960), 240 Ind. 668, 168 N. E. 2d 224.

"c. Counties are liable for damages on the same basis as civil cities for torts occurring in the performance of proprietary functions and under the facts in this case, had the defendant been a civil city, the law is clear that the defendant would have been liable in damages. *Flowers v. Board of Commissioners of the County of Vanderburgh, et al, supra; The City of Goshen v. Myers* (1889), 119 Ind. 196, 21 N. E. 657.

"2. The decision of the court is not sustained by sufficient evidence in the following particulars:

"a. The affidavits submitted by the defendants in support of their motion for summary judgment did not comply with the requirements of Burns' Indiana Statute[s] Annotated § 2-2524(e) in that they did not set forth facts as would be admissible in evidence and did not set forth any facts in regard to the allegations set forth in defendants' motion for summary judgment."

Appellant's motion for a new trial was overruled, and from this ruling this appeal followed.

Appellant's assignment of errors is as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to appellant, in this:

"1. The Court erred in overruling appellant's motion for a new trial.

"2. The decision of the Court is contrary to law.

"3. The decision of the Court is not sustained by sufficient evidence.

"4. The Court erred in sustaining defendants' motion for summary judgment.

"5. The Court erred in its conclusion of law 'that the defendant is entitled to a judgment as a matter of law.'"

The appellant maintains in his assignment of error No. 1, that the court erred in overruling appellant's motion for a new trial, and urges the following three propositions of error in said assignment:

1. The decision of the court is contrary to law.

2. The court erred in sustaining defendant-appellee's motion for summary judgment.

3. The court erred in its conclusion of law that the defendant-appellee is entitled to a judgment as a matter of law.

Inasmuch as substantially the same question is raised in this case by all three propositions of error, we are grouping and discussing them together in this opinion.

The essential question of law is whether appellee county is immune from suit, assuming that the facts pleaded in the appellant's complaint are true.

The appellant objects to the decision of the court as being contrary to law because it is based on a faulty premise to the effect that an uninsured county enjoys governmental

immunity from suit for damages for torts committed in the *performance of all functions, including proprietary and corporate functions.* Because this is a false premise according to the contention of the appellant insofar as proprietary functions are concerned, and because the appellee was engaged in a proprietary function when negligently causing damage to appellant, the court erred in sustaining appellee's motion for summary judgment; and erred in its conclusion of law that the appellee was entitled to a judgment as a matter of law.

The appellee filed its motion for summary judgment under the provisions of Burns' Indiana Statutes Annotated § 2-2524, which reads in part as follows:

> "(b) . . . A party against whom a complaint, counterclaim or cross-complaint is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

> "(c) . . . The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." (Emphasis supplied.)

\* \* \* \* \*

It is the contention of the appellant that the appellee's motion for summary judgment did not contradict nor deny any of the allegations of appellant's complaint. It alleged:

> "1. Plaintiff's cause of action is against a body of the Government possessing sovereign power.

> "2. Plaintiff's cause of action is in tort, predicated on negligence of the defendant as a body of the Government.

"3. The defendant had no insurance coverage, insuring defendant against a risk of the kind and character described in plaintiff's complaint.

"4. Plaintiff's cause of action seeks damages for negligence of the defendant's officers, agents and employees, and the defendant being a sovereign power, and not being insured against a risk such as is alleged in plaintiff's complaint, is not liable in damages for the negligence of its officers, agents, and employees."

It is the further contention of the appellant that the facts alleged in appellant's complaint are required to be accepted as true for the purposes of this appeal. See *Pittsburgh Hotels Ass'n. v. Urban Redevelopment Authority of Pittsburgh* (D. C. Pa. 1962), 202 F. Supp. 486 (aff'd 309 F. 2d 186) (Interpreting FRCP 56 which is similar to Indiana's Summary Judgment Statute). That there is no "genuine issue as to any material fact", and the sole dispute is a question of law.

The appellant urges that under Burns' Indiana Statutes Annotated § 26-606 it has been held by our Supreme Court that counties in Indiana are liable for damages for torts occurring in the performance of proprietary functions. *Flowers v. Board of Commissioners of the County of Vanderburgh, et al., supra.* The *Flowers* case involved an action brought by the appellant against appellees to recover damages for personal injuries sustained by the appellant while skating at a rink operated in a county-owned park where skating was permitted upon the payment of an admission fee. The language that the court used in the *Flowers* case which is applicable to this appeal, is as follows:

"Appellant contends on this appeal (1) that appellees are not immune from tort liability for the negligent operation of a skating rink for profit, the same being a *proprietary function,* and (2) that appellees are estopped from raising the defense of governmental immunity under Burns' § 39-1819, *supra.* (Emphasis supplied.)

"The statutes of this state provide that county commissioners '. . . shall be considered a body corporate and politic by the name and style of "The Board of Commis-

sioners of the County of ——————"; and as such, and in such name, may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, not inconsistent with the provisions of this act.' (Burns' § 26-606)

"With reference to (1) it is the well settled general rule throughout the United States that while a county is not liable, in the absence of statute for torts committed by it in the exercise of its governmental functions, it is nevertheless liable for torts committed in a proprietary capacity. See: 20 C. J. S., 'Counties,' § 215.

"We have not been cited any decisions of this state which hold to the contrary although there are of course many cases holding that a county is not liable in tort for its acts in performing a governmental function. *Board of Commissioners of Jasper County v. Allman, Administrator* (1895), 142 Ind. 573, 42 N. E. 206, * * *; *Summers v. Board of Commissioners of Daviess County* (1885), 103 Ind. 262, 2 N. E. 725, *Board of Commissioners of Greene County v. Usrey et al.* (1943), 221 Ind. 197, 46 N. E. 2d 823. As to civil cities, there is numerous authority in this state distinguishing governmental functions from proprietary functions and holding civil cities liable for torts occurring in the performance of proprietary functions. "See: *City of Logansport v. Public Service Commission of Indiana et al.* (1931), 202 Ind. 523, 177 N. E. 249, * * *; *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N. E. 2d 568.

"The foregoing statute provides for the filing of suits by and against counties and we see no valid reason why the well settled rule holding civil cities liable for damages for torts occurring in the performance of their proprietary function *should not be applied to counties*. (Emphasis supplied.)

"It should also be noted that this Court in the case of *Haag v. The Board of Comm'rs. of Vanderburgh Co.* (1878), 60 Ind. 511, * * *, upheld the right of an injured person to obtain relief in an action for abatement of a nuisance. It has been argued that as a nuisance is a tort, this case establishes the liability of the county for torts *in the exercise of a proprietary function*. (Emphasis supplied.)

"In the case before us the facts alleged in appellant's reply are deemed admitted for the purposes of appellees' demurrer, and in the memorandum to such demur-

rer appellees have contended their sovereign immunity applied to proprietary profit-making functions as well as to governmental functions.

"Under such a state of facts it is our view that the doctrine of sovereign immunity is not applicable as this is obviously a case of a county in the exercise of a proprietary or corporate function. * * *"

It seems quite apparent according to the opinion in the *Flowers* case, that the appellee county, in repairing the bridge in question, was performing a proprietary or corporate function.

From a careful research of the decisions of our courts of appeal we have not found any Indiana cases since the 1960 *Flowers* case that deals with the issue of liability of counties for negligent acts and omissions in connection with the maintenance of county roads and bridges. It is, therefore, necessary to look to analogous cases involving cities to determine if the acts here involved were proprietary or governmental acts. The opinions in the cases cited immediately below reveal that cities have consistently been held liable for damages caused by negligence in the maintenance of streets and bridges. *The City of Michigan City v. Werner* (1916), 186 Ind. 149, 114 N. E. 636; *City of Kokomo v. Loy* (1916), 185 Ind. 18, 112 N. E. 994; *The City of Goshen v. Myers* (1889), 119 Ind. 196, 21 N. E. 657; *The City of Gary v. Bontrager Construction Company, et al.* (1943), 113 Ind. App. 151, 47 N. E. 2d 182; *The City of Indianapolis v. Emmelman* (1886), 108 Ind. 530, 9 N. E. 155; *Sherfey v. City of Brazil, supra; The City of Terre Haute v. Myers* (1940), 216 Ind. 349, 24 N. E. 2d 698.

Because the appellee lays great stress on the case of *Board of Commissioners of Jasper County v. Allman, Administrator, supra,* we deem it necessary to give careful consideration to this case. It appears that prior to 1895 there was a line of decisions holding counties liable for damages for negligently failing to discharge the duty to keep public bridges in

repair. In the *Allman* case, our Supreme Court discussed at length the difference in the statutes relating to county bridges and those relating to city bridges. The Supreme Court overruled the prior cases holding counties liable, and held as follows:

> "While the doctrine declared in the bridge cases might be properly overruled on other grounds stated in this opinion, we prefer to base our action on the broad ground that *counties, being subdivisions of the State, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State."* (Emphasis supplied.)

It is quite apparent that our Supreme Court based its decision on the broad principle granting governmental immunity to counties, with no distinction being made between proprietary functions and governmental functions. However, we feel that the *Allman* case can no longer be considered as authority in Indiana for holding counties immune from suit for torts committed by their agents and employees in discharging corporate functions of repairing, or failing to repair, bridges and roads. *Flowers v. Board of Commissioners of the County of Vanderburgh et al., supra.* If maintenance of roads and bridges is a corporate or proprietary function for cities, it certainly would be an anomaly to hold that maintenance of roads and bridges is a governmental function for counties. The *Flowers* case clearly demonstrates that a distinction should now be made between the governmental and proprietary functions of counties on the same basis as it is made for cities. It is quite clear that the acts of negligence in this case were ministerial and proprietary acts performed by the appellee after a decision was made by the appellee to repair the bridge in question. Therefore, for the purpose of this appeal, it is not necessary to decide whether the appellee would have been liable for damages caused by negligence in *failing* to repair a bridge. If it were assumed that the appellee would not be liable for damages caused by *negligently failing*

to repair a bridge or road because of some distinction between cities and counties, it is quite evident in this case that under the facts alleged in appellant's complaint the county would be liable for damages to appellant because bridge repair work is definitely the type of activity that is normally considered to be a ministerial activity that logically fits into the general concept of proprietary functions rather than governmental functions.

We feel that the effect of the case of *Board of Commissioners of Jasper County v. Allman, Administrator, supra,* can be summarized as follows: The holding of the case, "that counties, being subdivisions of the State, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State," was effectively set aside and overruled by the *Flowers* case insofar as it attempts to apply to a county while engaging in the performance of a proprietary function. The *Allman* case appears to have been effectively overruled by the *Flowers* case insofar as the *Allman* case attempts to make a distinction between cities and counties. See *Flowers v. Board of Commissioners of the County of Vanderburgh, et al., supra,* wherein it states:

". . . (w)e see no valid reason why the well settled rule holding civil cities liable for damages for torts occurring in the performance of their proprietary functions should not be aplied to counties." (Emphasis supplied.)

It is our opinion that even if the distinction made in the *Allman* case in regard to cities and counties is valid, the facts of the appellant's case at bar are distinguishable from the *Allman* case, so that in any event the *Allman* case would not bar recovery in this case.

The appellant's position is that pursuant to Burns' Indiana Statutes Annotated § 26-606, and the decision of the *Flowers* case, *supra,* counties in Indiana are liable for torts occurring in the performance of proprietary functions.

In answer to this position the appellee contends that the repair of a bridge on a public highway is a governmental function which makes counties immune from any tort liability; that no statutory authority exists which imposes such tort liability; and that the *Flowers* case does not subject the appellee to an action for damages caused by its negligence in the repair of a bridge on a public highway, where there was no insurance as authorized by § 39-1819, Burns' Indiana Statutes Annotated.

Section 39-1819, Burns' Indiana Statutes Annotated (1965 Repl.), in part, reads as follows:

"The state, or any municipal corporation thereof, is hereby empowered to purchase policies of insurance insuring the officer, appointees, agents, and employees of the state or municipal corporation against any loss or damage because of the liability imposed by law upon such officers, appointees, agents and employees for loss or damage resulting from bodily injury to, or death of, or property sustained by, any person or persons caused by accident and arising out of the ownership, maintenance, hire, or use of any motor vehicle owned by the state, or such municipal corporation and any other personal property whatsoever owned, hired, or used by the state or such municipal corporation and to pay the premiums thereon out of public funds. * * * No such policy of insurance shall be purchased by or issued or delivered to the state or to any municipal corporation thereof by any insurance carrier unless such carrier is duly authorized to transact such insurance business within the State of Indiana, * * * nor unless there shall be contained within such policy a provision that if there arises or may arise a claim, suit or cause of action in relation thereto, *such insurance carrier will not set up, as a defense, the immunity of the state or of such municipal corporation, but such insurance carrier shall be permitted to plead and interpose any other defense that would be available to the insured if such insured were a natural person or a private corporation.* In no event shall the insurance carrier be liable, in any case, in any amount in excess of the maximum amount named in the policy of insurance." (Emphasis supplied.)

It is our opinion, therefore, that the Supreme Court in the *Flowers* case, in effect, recognized that for the purpose of tort law, the general principle is that cities and counties should be treated alike.

While the appellant feels that the decision of the trial court is erroneous and requires a reversal of the same, he is also asking us to abrogate the principle of governmental immunity as it applies to all functions performed by counties whether the same be governmental or proprietary in nature, and states that a number of states have abrogated the principle of governmental immunity in one manner or another and make no distinction between governmental and proprietary functions. He has cited several cases decided by the courts of other jurisdictions that have abrogated the principle of governmental immunity, two of which are cited and quoted below in this opinion.

In the case of *Haney v. City of Lexington* (1965, Court of Appeals of Kentucky), 386 S. W. 2d 738, the State of Kentucky abrogated the doctrine of governmental immunity of municipal corporations, and did so retrospectively. The reasons for such decision included (1) dissatisfaction with the doctrine of municipal immunity; (2) past distinctions between governmental and proprietary functions contrived to soften the harsh application of an unfair law; and (3) reliance on the decision of the case of *Hargrove v. Town of Cocoa Beach, Fla.* (1957), 96 So. 2d 130. It is our opinion that while the Kentucky court in the *Haney* case did not consider the liability of any governmental unit other than a municipal corporation, the reasoning is equally applicable to counties in Indiana, since the Indiana decision in the *Flowers* case. The Kentucky court's opinion insofar is as applicable to this issue is as follows:

"Alene Faye Haney, age seven, met her death by drowning in the Woodland Park swimming pool in Lexington. The administratix of her estate filed suit against the City and alleged that the child's death was caused by negligent oper-

ation of the pool by the city of Lexington. The City defended on the ground that maintenance and operation of parks and recreational facilities are classified as governmental—not proprietary—functions and, therefore, a municipal corporation is not liable for the results of negligence in the operation of such facilities. The circuit court, under ample authority, dismissed the complaint. See *V.T.C. Lines, Inc. v. City of Harlan, Ky.*, 313 S. W. 2d 573; *Baker v. City of Lexington, Ky.*, 310 S. W. 2d 555; and *City of Louisville v. Pirtle*, 297 Ky. 553, 180 S. W. 2d 303.

"So, once again, we are called upon to examine this legal anachronism of municipal immunity from liability for tort. In 41 N.C.L. Rev. 290, 291 (1963), this is said:

" 'There is probably no tenet in our law that has been more universally berated by courts and legal writers than the governmental immunity doctrine. The criticisms are wide-ranging and highly varied. Some common examples are: that it is unfair to impose upon the individual the burden of his damage, rather than upon the entire community where it justly belongs; that by denying a remedy for a wrong, the doctrine results in the deprivation of life, liberty, and property without due process of law; and that the doctrine runs counter to a basic concept underlying the law of torts, that is, that liability follows negligence.'

"[1] We pointed out in *V.T.C. Lines, Inc. v. Harlan, Ky.* 313 S. W. 2d 573, that this Court in late years has accepted the theory with reluctance and has seized upon almost any excuse, however flimsy, to grant relief to any person harmed by negligence of a municipal corporation. The acceptance or use of a theory does not prove the truth or validity of the rule of law it supports. If its worth has been proven by extended experience, we can be content with that theory. But when a theory supporting a rule of law is not grounded upon sound logic, is not just, and has been discredited by actual experience, it should be discarded, and with it, the rule it supports. As stated in *Muskopf v. Corning Hospital District*, 55 Cal. 2d 211, 11 Cal. Rptr. 89, 359 P. 2d 457, 460, 'The rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia.'

"Even the origin of this doctrine contains some elements of the mysterious. Some writers assume that it is a direct outgrowth of the divine right of the king who could do no wrong. But insofar as municipal or county or local district communities are concerned, it is generally

agreed that the application of the immunity doctrine grew out of Russell [Russel] v. Men of Devon, 2 T. R. 667, 100 Eng. Rep. 359 (1788), which involved a tort action against an unincorporated county. In the *Muskopf* case this analysis of Men of Devon was made:

" 'The action was disallowed on two grounds: since the group was unincorporated there was no fund out of which the judgment could be paid; and 'it is better that an individual should sustain an injury than that the public should suffer an inconvenience.' 100 Eng. Rep. 359, 362. The rule of the Russell [Russel] case was first brought into this county by *Mower v. Inhabitants of Leicester,* 9 Mass. 247, 249. There the county was incorporated, could sue and be sued, and there was a corporate fund out of which a judgment could be satisfied. Ignoring these differences, the Massachusetts court adopted the rule of the Russell [Russel] case, which became the general American rule.'

"It is equally hard to determine how this doctrine became imbedded in the law of our Commonwealth. Apparently we started without it because in *Prather v. City of Lexington,* 52 Ky. (13 B. Mon.) 559, 560 (1852), this was said:

" 'Where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual. But, as a general rule, a corporation is not responsible for the unauthorized and unlawful acts of its officers, although done under the color of their office; to render it liable, it must appear that it expressly authorized the acts to be done by them, or that they were done in pursuance of a general authority to act for the corporation on the subject to which they relate. (*Thayer v. Boston,* 19 Pick. 511.) It has also been held that cities are responsible to the same extent, and in the same manner, as natural persons for injuries occasioned by the negligence or unskillfulness of their agents in the construction of works for their benefit. (*Ross v. City of Madison,* 1 Smith 98; *Mayor of Memphis v. Lasser,* 9 Humph., 757.) And where a city corporation is bound to keep the streets and sewers of the city in proper repair,

it is liable to damages if any person be injured by its neglect to have such repairs made. (*The Mayor, etc. v. Furze,* 3 Hill, 612; *Mayor of Linn v. Turner,* Cowp. 86.)' Recovery was denied in the foregoing case, however, because the Court determined there was no duty imposed upon a municipal corporation to protect against mob violence. (To remedy this condition a statute fixing liability upon the city was enacted. KRS 411.100.)

"We will not trace the history of the attempt of the courts to lessen the severity of the rule of municipal immunity. It is sufficient to say that courts made distinctions between functions of the municipal corporation that purportedly were governmental or public and those thought to be proprietary or private, denying liability in the case of governmental functions, but imposing it in situations involving proprietary actions. At most, the distinctions seem to be contrived and without sensible basis. That which was proprietary in some states was deemed governmental in others. See Annot. 60 A. L. R. 2d 1198, 1204 (1958).

"The distinction we have made in this state has not resulted from uniform thought. As early as 1910 this Court stated: 'It must be admitted that many of the distinctions that this court, as well as other courts of last resort, have made between what are designated the public and private powers, duties, and liabilities of municipal corporations, are difficult to understand.' *Kippes v. City of Louisville,* 140 Ky. 423, 131 S. W. 184, 30 L. R. A., N. S., 169. For instance, a city is liable for negligent failure to maintain its streets in a reasonably safe condition for public travel, *Lampton & Burks v. Wood,* 199 Ky. 250, 250 S. W. 980. It is not responsible for negligent acts which might occur when those same streets are sprinkled with water or oil. *Kippes v. City of Louisville,* 140 Ky. 423, 131 S. W. 184; and *City of Georgetown v. Red Fox Oil Co.,* 228 Ky. 599, 15 S. W. 2d 489. Nor is the city liable for injuries resulting from defects in a pathway (bridle path) located exclusively within a city park. *City of Louisville v. Pirtle,* 297 Ky. 553, 180 S. W. 2d 303. The act of constructing a sewer is governmental in nature, with no liability, *Smith's Adm'r v. Commissioners of Sewerage of Louisville,* 146 Ky. 563, 143 S. W. 3, 38 L. R. A. N. S., 151, but afterwards, if a negligent act of the city causes the basement of a connecting residence to be flooded, the city is responsible in damages. *Board of Councilmen of City of Frankfort v. Buttimer,* 146 Ky. 815, 143 S. W. 410. When a city owns

and operates a cemetery, it functions in a proprietary capacity. *City of Hopkinsville v. Burchett, Ky.*, 254 S. W. 2d 333. When it operates a park, the action is governmental. *Baker v. City of Lexington, Ky.*, 310 S. W. 2d 555. We see no reason to belabor this point. We believe that all of these contrived devices resulted from the fact that the courts for many years have been repelled by the injustice of the rule of municipal immunity and have attempted to soften its harsh application by seeking a few escape hatches.

"The reason the courts have denied their logical impulses and have continued to enforce an unfair rule of law is because they have been nurtured and sustained by another ancient and firmly fixed doctrine, that is, stare decises et non quieta movere—to adhere to precedents and not to unsettle things which are established. But when established things are no longer secure in a fast changing world, the courts should reexamine the precedents and determine if they provide a proper standing under present conditions.

"The Supreme Court of Florida, in 1957, was the first to pierce the armor of municipal immunity. The reason for that action may be found in the well-reasoned opinion in *Hargrove v. Town of Cocoa Beach, Fla.*, 96 So. 2d 130, 60 A. L. R. 2d 1193. In 1959, the Illinois Supreme Court, in *Molitor v. Kaneland Community Unit District*, 18 Ill. 2d 11, 163 N. E. 2d 89, 86 A. L. R. 2d 469, abolished the immunity from tort liability enjoyed by school districts. In that opinion are cited many cases and articles which demonstrate the incongruities resulting from attempts to fit particular conduct into one of the categories known as 'governmental and proprietary.' In January 1961, the Supreme Court of California, in *Muskopf v. Corning Hospital District*, 55 Cal. 2d 211, 11 Cal. Rptr. 89, 359 P. 2d 457, rejected the doctrine of governmental immunity from tort liability. There, also, may be found a detailed analysis of the reasons why the doctrine arose and the reasons for its decline and subsequent abolition. Michigan followed this trend in *Williams v. City of Detroit*, 364 Mich. 231, 111 N. W. 2d 1. In June 1962, the Supreme Court of Wisconsin, in *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N. W. 2d 618, followed by rejecting the doctrine of municipal immunity. In December of the same year, the Supreme Court of Minnesota, in *Spanel v. Mounds View School District*, 264 Minn. 279, 118 N. W. 2d 795, found the doctrine of municipal immunity from tort liability to be archaic.

"In November 1957, this Court in *V.T.C. Lines, Inc. v. City of Harlan, Ky.*, 313 S. W. 2d 573, criticized the doctrine and quoted with approval certain language from the opinion of the Florida Court, but nevertheless concluded: 'We must make a choice as to whether the change in such a rule should be made by the legislature or by us. The majority of the court believes that the change addresses itself to legislative discretion and that we must content ourselves only with criticism of the rule which we have created.' We think we were incorrect in taking such a position. The very foundation upon which such an attitude is based is not a solid one. We have no reason to believe that the members of the legislature approve all existing common law rules concerning tort actions; in fact, many members of that body, when acting in individual capacities as lawyers, have rather forceably indicated in briefs and petitions for rehearing that they do not. It seems to us that an equally reasonable assumption is that the legislature might expect the courts themselves to correct an unjust rule which was judicially created. The very machinery of the short biennial sessions of the General Assembly denies to it the time or, for that matter, the inclination to examine the various doctrines and theories of common law torts. A great number of the legislators are not lawyers nor are they interested in the details of law.

\* \* \* \* \*

"[5] In the V.T.C. Lines, Inc. case, this Court gave warning that it was dissatisfied with the rule of municipal immunity. We now recede from prior decisions which hold municipal corporations immune from liability for ordinary torts. We wish to make it plain, however, that this opinion does not impose liability on the municipality in the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions. We think the scope of abrogation adopted by Wisconsin is a proper one and we adopt it. It is stated in *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N. W. 2d 618, as follows:

" 'Perhaps clarity will be afforded by our expressions that henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity. In determining the tort liability of a municipality it is no longer necessary to divide its operations into those which are proprietary and those which are governmental. Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is

only as to those harms which are torts that governmental bodies are to be liable by reason of this decision.' "

The opinion of the Florida court (which is cited in the *Haney* case) in *Hargrove v. Town of Cocoa Beach, supra,* insofar as is applicable to the case at bar, holds as follows:

"Appellant Ervine Hargrove, who was plaintiff below; seeks reversal of an order of the trial judge sustaining a motion to dismiss her complaint against the appellee Town in an action seeking damages for the alleged wrongful death of appellant's husband.

"To dispose of the case we must determine whether a municipal corporation should continue to enjoy immunity from liability for the wrongful acts of police officers.

"Appellant, as plaintiff, alleged that her husband was incarcerated in the town jail while in a helpless condition because of excessive intoxication. She alleged that the jailor locked all the doors and departed, leaving no guard or other attendant on duty; that during the night the cell became filled with smoke resulting in the fatal suffocation of appellant's husband. For the alleged negligence in leaving the jail unattended and the prisoner unprotected against the fire, thereby producing the death of her husband, Mrs. Hargrove sought damages from the City. The trial judge sustained a motion to dismiss the complaint on the theory that the municipality was immune to liability for this type of tort. Reversal of his order is now sought.

"The appellant recognizes our prior decisions on the subject and frankly requests us to recede therefrom.

"The appellee, of course, cites our own precedents to support the ruling of the trial judge.

"We are here faced squarely with an appeal to recede from our previously announced rule which immunizes a municipal corporation against liability for torts committed by police officers. The rule against municipal liability for torts has been the subject of thousands of pages of learned dissertions. We are told that since 1900 well over two hundred law review articles alone have been written on the subject. Innumerable textbooks have made their contribution, most of them adversely critical. The books are full of decisions of courts covering various aspects of the problem. Our own precedents reveal that this Court has many times had

the matter under consideration. Because of these comprehensive discussions of the subject, there is very little that we can now add.

"Our own present study of the matter leads us to a consideration of the problem as one arising out of an historical recognition of a division of municipal functions into two categories, to wit, governmental and proprietary. It has been held that in the exercise of so-called governmental functions, the municipality is immune to liability. In the exercise of proprietary functions, the municipality has been held responsible for the torts of its agents.

"Immunization in the exercise of governmental functions has been traditionally put on the theory that 'the king can do no wrong but his ministers may'. In applying this theory the courts have transposed into our democratic system the concept that the sovereign is divine and that divinity is beyond reproach. In preserving the theory they seem to have overlooked completely the wrongs that produced our Declaration of Independence and in the ultimate resulted in the Revolutionary War. We, therefore, feel that the time has arrived to declare this doctrine anachoristic [sic] not only to our system of justice but to our traditional concepts of democratic government.

"The immunity theory has been further supported with the idea that it is better for an individual to suffer a grievous wrong than to impose liability on the people vicariously through their government. If there is anything more than a sham to our constitutional guarantee that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, then certainly this basis for the rule cannot be supported.

"Tracing the rule to its ultimate progenitor we are led to the English case of *Russel v. Men of Devon,* 2 T. R. 667, 100 Eng. Rep. R. 359 (1788). *The Men of Devon* decision merely relieved the inhabitants of an unincorporated *county* from liability for damages resulting from a defective bridge. Aside from the fact that the case involved a county rather than a city, it is interesting to note that we ourselves have refused to follow this historic precedent so far as cities are concerned in the numerous cases in which we have held municipalities liable for negligence in the maintenance of streets and bridges. As early as 1850 in *City of Tallahassee v. Fortune,* 3 Fla. 19, the *Men of Devon* decision was very clearly explained and distinguished. Our

Court then pointed out that the leading English precedent turned on the proposition that it was an action against *all of the people of an unincorporated community* having no corporate fund or legal means of obtaining one. The law would not impose the burden on each individual citizen.

"The appellee here contends that any recession from the rule of immunity should come about by legislation rather than judicial decree. It is insisted that the immunity rule is a part of the common law which we have adopted and that therefore its abolition should come about only by statute. We are here compelled to disagree.

"Assuming that the immunity rule had its inception in the *Men of Devon* case, and most legal historians agree that it did, it should be noted that this case was decided in 1788, some twelve years after our Declaration of Independence. Be that as it may, our own feeling is that the court should be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter which the courts themselves originated.

"The problem in Florida has become more confusing because of an effort to prune and pare the rule of immunity rather than to uproot it bodily and lay it aside as we should any other archaic and outmoded concept. This pruning approach has produced numerous strange and incongruous results. While holding that a municipality can be held liable for the negligent operation of a fire truck, we have exempted a municipality from liability when a jailor assaulted a prisoner with a blackjack and produced a skull concussion which resulted in his death.

"Despite the exemption extended in the case last mentioned, we nevertheless in *Lewis v. City of Miami*, 127 Fla. 426, 173 So. 150, had held the municipality liable to a prisoner who had contracted a communicable disease while in the city jail. Under the rule we have followed, if a police officer assaults and injures a prisoner, the municipality is immune but if the police officer is working the prisoner on the public streets and negligently permits his injury, the municipality can be held liable. If the police officer is driving an automobile and negligently injures a citizen, the municipality is liable but if the same police officer gets out of the same automobile and wrongfully assaults a citizen, the municipality is immune from responsibility.

"We have mentioned these incongruities in the application of the immunization doctrine in Florida merely to justify the position, which we here take, that the time

has arrived to face this matter squarely in the interest of justice and place the responsibility for wrongs where it should be. In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law is not static. The great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times. The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice.

"We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as *Elrod v. City of Daytona Beach,* 132 Fla. 24, 180 So. 378, 118 A. L. R. 1049; and *Akin v. City of Miami, Fla.,* 1953, 65 So. 2d 54.

"Subject to the limitations above announced, we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. To support the rule we harken back to our original Florida precedent, *City of Tallahassee v. Fortune, supra.* Our judicial forebears there held that where an individual suffers a special personal damage not common to the community but proximately resulting from the negligence of the municipal corporation acting through its employes, such individual is entitled to redress. We think this general rule was sound when it was announced in 1850 and it should be reestablished as the law of Florida. Within the framework of the above announced limitations this is the rule of our present opinion. In this vein, we therefore

point out that instead of disregarding the rule of stare decisis, we now merely restore the original concepts of our jurisprudence to a position of priority in order to eradicate the deviations that have in our view detracted from the justice of the initial rule."

It appears that the same incongruities noted in the Kentucky and Florida cases in the application of the governmental immunity doctrine are also present in the law of Indiana. For example, as noted in *Haney v. City of Lexington, supra,* the Kentucky court had held by previous decisions that the act of constructing a sewer was a governmental function as well as the operation of a park. In Indiana cities have constantly been considered to be acting in a proprietary capacity in regard to constructing a sewer—*City of Logansport v. Cotner et al.* (1933), 205 Ind. 13, 185 N. E. 634—and in the operation of a park. See also *City of Kokomo v. Loy, supra.* Concerning governmental immunity of counties, the Indiana decisions have fluctuated. Beginning with *House v. Board of Comm'rs. of Montgomery Co.* (1878), 60 Ind. 580, a county was held liable for damages sustained because of negligently failing to repair a bridge. This remained the law on bridges in Indiana until the case was reversed in *Board of Commissioners of Jasper County v. Allman, Administrator, supra.* As discussed previously in this opinion, *Allman* held that a county was protected by governmental immunity whether functions performed were governmental or proprietary in nature. Thereafter, the idea of governmental immunity for counties generally precluded the institution of all tort actions against counties until the decision in the *Flower* case. See also *State, ex rel. Wiles, Treasurer v. Spinney, Treasurer* (1907), 166 Ind. 282, 76 N. E. 971; *State, ex rel. Board of Commissioners of the County of Hendricks v. Board of Commissioners of the County of Marion* (1908), 170 Ind. 595, 85 N. E. 513; *Rooker et al v. Lake Erie and Western Railroad Company et al.* (1917), 66 Ind. App. 521, 114 N. E. 998; *McDermott v. Board of Commissioners of the County of Delaware, et al.* (1915), 60 Ind. App. 209, 110 N. E. 237;

*Talbott et al. v. Board of Commissioners of the County of St. Joseph* (1908), 42 Ind. App. 198, 85 N. E. 376; *Pritchett v. Board of Commissioners of the County of Knox et al.* (1908), 42 Ind. App. 3, 85 N. E. 32; and *Board of Commissioners of Greene County v. Usrey et al., supra.*

For the reasons expressed by the cases of the courts of Kentucky and Florida cited above in this opinion, in abrogating governmental immunity for municipal corporations, the appellant urges this court to abrogate governmental immunity for the counties of this state. It is our opinion in regard to the facts presented in this appeal, it is only necessary to do as the Florida court did in the *Hargrove* case, and that is, to go back to the original Indiana precedent announced in the case of *House v. Board of Comm'rs. of Montgomery Co., supra,* to hold on this appeal that the appellee is not immune from an action for damages caused by the negligent acts and omissions of the appellee in repairing the bridge in question.

In *\*Brinkman v. City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169, our court abrogated the doctrine of municipal tort immunity in holding that the doctrine of sovereign immunity has no proper place in the administration of a municipal corporation.

Pursuant to the *Brinkman* case, cities in Indiana may now be found liable in tort if the relationship of principal and agent, or master and servant, is found to exist between the municipality and the person who committed the tort.

We are of the opinion that the decision and reasoning of the *Brinkman* case should be applied to the counties of Indiana and, therefore, hold that the doctrine of governmental immunity as it applies to the counties of Indiana is hereby abrogated and that counties may

---

\* *Brinkman v. City of Indianapolis, supra,* is now pending in the Supreme Court on a petition to transfer.

now be held liable for the tort of its officers, agents or employees under the doctrine of respondeat superior.

It is further our opinion that in determining the tort liability of a county or a city, our courts can now ignore the governmental-proprietary distinction and render judgments and assess damages without regard to the policy limits of any insurance carried by the city or county.

Any existing case decided by our courts of appeal, the opinion of which is inconsistent with this opinion, is hereby overruled.

We feel that the trial court erred in sustaining the appellee's motion for summary judgment and in overruling the appellant's motion for a new trial.

Judgment reversed with instructions to the trial court to grant the motion for a new trial.

Bierly, J. and Pfaff, J. concur.

Cook, P.J., Not participating.

NOTE.—Reported in 239 N. E. 2d 160.