The **PLUM TREE, INC.**

v.

The **ROUSE COMPANY, INC.**, et al.

Civ. A. No. 71–2878.

United States District Court,
E. D. Pennsylvania.

Oct. 5, 1972.

See also D.C., 343 F.Supp. 667.

Martin Howard Katz, Bridgeport, Pa., for plaintiff.

Duane, Morris & Heckscher by Henry T. Reath, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Plaintiff is a franchisor of a nation-wide chain of retail gift stores. On behalf of its franchisees, plaintiff has entered into long-term leases with defendant Rouse Company, Inc., and various of Rouse's subsidiary corporations, also defendants herein, for store space at seven shopping center malls owned and or operated by defendants. Plaintiff alleges that in executing and administering the leases, defendants are culpable of federal anti-trust violations, breach of contract, and misrepresentation. For relief, plaintiff seeks damages in an amount of nearly 1.5 billion dollars (including anti-trust damages of $250,000,000 trebled pursuant to § 4 of the Clayton Act, 15 U.S.C.A. § 15) and further asks that the leases be declared null and void as violative of anti-trust provisions. Before us now is plaintiff's motion to determine the propriety of maintaining this suit as a class action. For the two reasons set forth below, we conclude that plaintiff has failed to carry his burden of showing that the proposed class falls within the limits of Fed.R. Civ.P. Rule 23. Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa.1971).

We deny plaintiff's motion primarily because of the doubts surrounding plaintiff's ability to adequately represent the proposed class members. These doubts arise because plaintiff is presently being sued in two separate suits pending in this district, by various of its franchisees, on the basis of grievances very similar to those alleged by plaintiff in the instant case. The franchisees have been allowed to prosecute as a class in one of the suits, and their class action motion is pending in the other.

In The Plum Tree, Inc. v. Cahn et al., Civil Action No. 71–553, Cahn is a Plum

Tree franchisee counterclaiming against Plum Tree. Cahn alleges that Plum Tree is in violation of the Sherman and Clayton Acts because Plum Tree's franchise agreement and conduct result in coercive and illegal exclusive dealing and tied-in commodity purchases for the franchisees. Franchisees, according to Cahn, must not only purchase all their normal merchandise requirements from Plum Tree, they must also purchase from the franchisor additional goods and services if they wish to buy the basic merchandise. Cahn avers, for example, that franchisees are required to purchase advertising and promotional services from persons selected by Plum Tree at a charge of four percent of franchisees' gross weekly sales.

In the second franchisees' suit against Plum Tree, Seligson v. The Plum Tree et al., D.C., 350 F.Supp. 440, all Plum Tree franchisees have been made members of the plaintiff class in two subgroups. Here, plaintiff franchisees have alleged basically the same anti-trust violations against Plum Tree: coerced exclusive purchase and tie-in arrangements.

In the action presently before us, however, the shoe is on the other foot. Plum Tree is now contending that defendants' leases with Plum Tree and other mall tenants are also violative of the Sherman and Clayton Acts in that various lease provisions illegally attempt to fix prices and restrain trade and competition. Indeed, the lease provisions to which plaintiff objects find distinct analogs in the challenged Plum Tree franchisee agreement. For example, in the present Complaint Plum Tree complains that defendants require each tenant in the shopping malls to join a merchants' association for joint advertising without prior approval of the defendants. However, in the Cahn case, as noted above, franchisees are challenging a similar franchise agreement provision which requires franchisees to pay four percent of

gross receipts each week to pay for advertising by Plum Tree, and "the method and manner of advertising shall be within the sole discretion of The Plum Tree." Moreover, the franchise agreement also requires prior written approval by The Plum Tree as to media and form of all advertisements proposed to be used by franchisees.

Plum Tree also objects to defendants' prohibition of its tenants from owning and operating a business, within a five mile radius, similar or competitive to the business in the shopping center. The distance is claimed to be unreasonable by Plum Tree. Yet in the franchise agreement which plaintiff is defending in Cahn and Seligson, Plum Tree requires a franchisee to operate no other business anywhere, and within a year after termination of the franchise agreement, the franchisee is prohibited from operating within ten miles of the store which it had operated or of any other franchisee.

A third similarity in the "restrictive" conditions imposed by both Plum Tree and defendants is found in the regulation of hours. A challenged provision in defendants' lease limits the hours and days which mall stores can operate. The Plum Tree franchise agreement, however, requires that its franchisees remain open "during the hours specified by Plum Tree."

The pattern that emerges from a capsule review of the Cahn, Seligson and instant case is that of two large business enterprises, Plum Tree and Rouse and its subsidiaries, imposing allegedly illegal restrictive provisions in their business agreements and leases with their franchisees or tenants as a condition to doing business with such merchants. Charges in the nature of exclusive dealing and tie-in requirements, among others, characterize the law suits against both Plum Tree and Rouse. Indeed, some of the provisions found in the franchisee agreements are very similar

to those found in the Rouse lease. Plum Tree, thus, has taken conflicting positions in different but related cases.

Plum Tree's manifest problem in this circumstance is that it is, so to speak, playing both ends against the middle: Plum Tree is attacking Rouse's restrictive provisions in the instant case yet must turn around and defend its own, very similar but perhaps more restrictive provisions in the *Cahn* and *Seligson* cases. Plum Tree seeks to represent a proposed class of tenants in this action which includes some of the very franchisees in the plaintiff class confirmed in the *Seligson* case in which Plum Tree is defendant.

We recognize that the *Cahn* and *Seligson* matters involving franchise agreements differ in certain respects from the case before us, which involves leases.[1] However, we believe that the anti-trust implications of restrictive franchise agreements and restrictive leases, such as are found here, are sufficiently similar to warrant our conclusion that plaintiff's interest in prosecuting the lease challenge is at least in potential conflict with its interest in defending its restrictive conditions in the franchisee cases. Where plaintiff is called upon to defend its own restrictive method of merchandising we cannot be assured that it will wage a vigorous challenge of a comparable method of restrictive trade. Plaintiff's adequacy of representation is equally questionable with respect to proposed members of the class who are not Plum Tree franchisees, and do not operate within such restrictions; where such tenants would be bound by judgment in this suit, they should not be represented by a party which does have an interest in the maintenance of certain restrictive conditions.

A second reason for denying plaintiff's motion is the substantial doubt at this stage as to whether plaintiff can satisfy the overlapping requirements of sub-divisions (3) and (4) of Rule 23(a) Fed.R.Civ.Pro., which require that

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In its attempt to acquire representative status, plaintiff suffers from the fact that as a franchisor it does not operate any retail stores in the seven malls. Accordingly, plaintiff would not appear to be a member of the class of tenants it purports to represent and any injury suffered by plaintiff as franchisor, because of defendants' alleged anti-trust violations, could be so remote and inconsequential as to deprive plaintiff of standing to sue under § 4 of the Clayton Act. It is self-evident that if a plaintiff does not have standing to sue particular defendants, it cannot represent other members of the proposed class who would have the requisite standing to sue. Kauffman v. Dreyfus Fund, Inc., 434 F. 2d 727 (3rd Cir. 1970).

Considerable uncertainty as to plaintiff's standing is raised by cases holding that a franchisor could not bring suit for treble damages on behalf of its franchisees where the franchisor was not within the "target area" of the alleged wrongdoing and thus would suffer damages only indirectly. Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183 (2nd Cir. 1970); Nationwide Auto Appraiser

---

1. Plum Tree has attempted to distinguish its need for imposing restrictive conditions on its franchisees from any comparable need on Rouse's part, on the basis of Section 5 of the Lanham Act. 15 U.S. C.A. § 1055. We find Plum Tree's argument unpersuasive. Generally speaking, Section 5 of the Lanham Act requires trademark owners to monitor or control their licensees to insure that the latter's product bearing the same trademark is not of substandard quality. Quality control need not encompass practices such as exclusive buying and tie-ins which are directed toward the maintenance of image, good will and profits.

Service, Inc. v. Association of Casualty & Surety Companies, 382 F.2d 925 (10th Cir. 1967). Very analogous to the franchisor cases are those cases holding that a non-operating lessor lacks standing to sue for anti-trust injuries to its lessee: Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292 (2nd Cir. 1971); Melrose Realty Co. v. Loew's, Inc., 234 F.2d 518 (3rd Cir.), cert. denied, 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed.2d 85 (1957); Harrison v. Paramount Pictures, Inc., 115 F.Supp. 312 (E.D.Pa.1953), aff'd, 211 F.2d 405 (3rd Cir.), cert. denied, 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653 (1954); or that a patent owner lacks standing to sue for anti-trust violations directed against its licensees: S.C.M. Corp. v. Radio Corp. of America, 407 F.2d 166 (2nd Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461, rehearing denied, 396 U.S. 869, 90 S.Ct. 38, 24 L.Ed.2d 125 (1969); Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2nd Cir.), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).[2]

We do not decide today the issue of plaintiff's standing to sue defendants. The question has not been squarely raised by the parties and its resolution undoubtedly must await the development of more facts. However, we agree with the court in City and County of Denver v. American Oil Co., 53 F.R.D. 620 (D. Colo.1971) that a class action should not be authorized when there exists substantial doubt as to the would-be representative's standing. Certainly, it would not be wise for this court to permit the expenses and burdens inherent in the creation and defense of a class action only to decide at a later stage that the class has no proper representative. *Cf.,* Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967).

To conclude, we note that our decision today does not sound the "death knell" of this lawsuit. Our denial of plaintiff's motion does not undercut the capability of plaintiff to continue prosecution of its claims or the capability of proposed class members to institute suit on their own. Plaintiff undoubtedly has the financial resources to sustain this action to its conclusion; certainly, the very sizeable monetary claims (over $1,000,-000 per proposed class member), if alleged in good faith, should provide sufficient incentive for plaintiff to continue. Indeed, such large demands should likewise offer adequate impetus for initiation of litigation by aggrieved smaller tenants of defendants' malls. See, Caceres v. International Air Transport Assoc., 46 F.R.D. 89 (S.D.N.Y. 1969), app. dismissed, 422 F.2d 141 (2d Cir. 1970). Moreover, because members of the proposed class are businessmen, as opposed to defrauded consumers or victims of civil rights discrimination, we may presume that such would-be class members are sufficiently sophisticated to recognize legal harm to themselves and pursue the appropriate relief.

Finally, should any of the proposed class members decide to institute suit on their own against defendants, the options of joinder under Fed.R.Civ.P. Rule 20, or intervention under Rule 24, may be available.

2. The rationale of the "target area" limitation on standing for anti-trust treble damage claims are, first, to provide a fair and easily identifiable cut-off point where damages move from the ascertainable into the speculative; and, second, to prevent abuse of a private enforcement weapon against anti-trust violations by permitting and attracting too many plaintiffs. Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., *supra,* 454 F.2d at 1295, 1296.