**Martha Verge duPONT et al.,
Plaintiffs,**

**v.**

**WOODLAWN TRUSTEES, INCORPORATED, a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 4726.**

United States District Court,
D. Delaware.

Aug. 12, 1974.

---

Ernest S. Wilson, Jr., of Wilson & Russell, Wilmington, Del., for plaintiffs.

E. N. Carpenter, II, and Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, Del., for defendant.

## OPINION

SCHWARTZ, District Judge.

In the Fall of 1972, defendant, Woodlawn Trustees, refused to sell a residence located in a predominantly white suburban area to plaintiff, Martha Verge duPont (duPont) after it had publicly advertised the home for sale. During the course of negotiations, duPont had advised defendant the home would be purchased for the CHILD Foundation, a private organization, for use as a group home for the care, education, and counselling of dependent and neglected children of all races. Defendant predicated its refusal upon its desire not to sell the home for other than a single-family residence. Plaintiff asserts defendant's motivation for refusal to consummate the transaction was its "desire not to allow black people and dependent or neglected children to reside on the property, which was part of a long term policy of exclusion practiced by Defendant in Brandywine Hundred. . . ."

The defendant's allegedly racially-motivated refusal to sell to duPont culminated in the filing of a complaint in this Court. Plaintiffs are Martha Verge duPont, Garry Lee McDonald, and Randall C. Law. Although it would appear from the caption that all three seek relief individually and as class representatives, the complaint reveals that only McDonald and Law sue in representative and individual capacities; Mrs. duPont sues only on her own behalf. A reading of the complaint coupled with clarifica-

tion and a concession at oral argument[1] discloses three causes of action in one count: (1) defendant breached a contract to sell the home to duPont; (2) defendant deprived duPont of her civil rights under 42 U.S.C. § 1982; and (3) defendant violated the civil rights of Garry Lee McDonald and Randall C. Law (Law) individually and of Law as a representative of a class of dependent and neglected white and black children who reside within the vicinity of Wilmington, Delaware, and all other similarly situated persons. Plaintiffs seek entry of an equitable decree ordering conveyance of the property in question to plaintiff duPont and issuance of an injunction permanently enjoining defendant from refusing to sell or rent property in contravention of 42 U.S.C. § 1982.

Pursuant to Fed.R.Civ.P. 23(c)(1), defendant moved the Court for an order determining that the case is not to be maintained as a class action. In support of its motion (hereinafter referred to as a Motion for Class Determination) defendant has urged the class action aspect of the instant litigation should be dismissed because (1) there is no allegation in the complaint which creates an actual case or controversy between plaintiff Law and defendant as required by Article III, § 2 of the Constitution; (2) on the record there is no showing Law suffered any cognizable injury by reason of defendant's alleged discriminatory motivation; and (3) Law has no cause of action under 42 U.S.C. § 1982. In addition, defendant asserts failure on the part of Law to meet the prerequisites essential to maintenance of a class action.

■■ The procedural context, viz., a request for a class action determination pursuant to Fed.R.Civ.P. 23(c)(1), precludes definitive, dispositive consideration on the merits of some but not all of the issues raised by defendant. "The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir. 1970). Contentions which seek dismissal based upon a failure to state a claim upon which relief may be granted are properly made pursuant to Fed.R.Civ.P. 56 or 12(b)(6), not Fed.R.Civ.P. 23. See Cusick v. N. V. Nederlandsche, Combinatie Voor Chem. Industrie, 317 F. Supp. 1022, 1024 (E.D.Pa. 1970).

■ Notwithstanding its procedural limitations, the Court is duty-bound to inquire into any question going to jurisdictional defects. City of Kenosha v. Bruno, 412 U.S. 507, 511, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); Cameron v. Hodges, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888); Newton v. United States, 329 F.Supp. 90, 91 (S.D.Tex. 1971).[2] Asserted jurisdictional deficiencies addressed to the plaintiff, Law, are lack of jurisdiction over the subject matter for want of a "case or controversy" within the meaning of Article III, § 2 of the Constitution and lack of standing.

■■ A complaint must satisfy "the threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The present complaint does allege in substance defendant's racially-motivated refusal to sell property to plaintiff, duPont, constituted a violation of Law's civil rights under 42 U.S.C. § 1982. Plaintiff duPont filed an affidavit establishing a probability that Law would have been admitted to the facility had duPont been able to purchase the

---

1. Plaintiff conceded Garry Lee McDonald was not a proper class representative.

2. In each of the cited cases, the Court raised lack of jurisdiction on its own motion.

property in question.[3] Under this circumstance the Court finds Law has made a sufficient showing to satisfy the threshold case or controversy requirement of Article III, § 2.

■ An additional prerequisite to this Court's consideration of the issues raised in the instant motion is that the parties have standing to press their respective claims upon the Court. More specifically, the plaintiffs must satisfy this Court that they personally have the requisite interest in the outcome of this litigation to seek relief on behalf of themselves and the class they purport to represent. Absent such a showing, the Court is duty-bound to dismiss the action as to both the class representatives and the putative class. *Cf.* O'Shea v. Littleton, *supra.*

The latter result occurs because of the nature of the standing issues presented in this litigation. Standing has been defined as follows:

> Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing. It is, of course, a question of federal law. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663.

> Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in

the outcome of the controversy," Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947. . . . the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff. Sierra Club v. Morton, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636.

In the instant case, plaintiff relies on a "specific statute authorizing invocation of the judicial process" within the meaning of the language quoted above. The statutory jurisdictional adjunct of 42 U.S.C. § 1982 is 28 U.S.C. § 1343(4) which provides:

> § 1343. Civil rights and elective franchise.

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

> \* \* \* \* \* \*

> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

The statutory conferral of original jurisdiction by 28 U.S.C. § 1343(4) thus poses the question of whether the record demonstrates defendant, Woodlawn Trustees, is alleged to have violated a civil right conferred upon plaintiff, Law, by 42 U.S.C. § 1982 which provides:

> § 1982. Property rights of citizens.

> All citizens of the United States shall have the same right, in every

---

**3.** An affidavit was filed following oral argument on behalf of plaintiff, Law, by Joseph M. Dell'Olio, Executive Vice-President of the CHILD Foundation to the effect that it was with certainty Law would have been transferred to the residence in question. That affidavit has not been considered because it was filed without permission or notice to the Court.

State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

■■ The concept of standing to litigate contemplates two requirements. The litigant must first satisfy the Court that he has suffered some actual harm. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The harm need not be of an economic nature; it may constitute an invasion of aesthetic, conservational, recreational, and spiritual interests as well. *Id.* at 154, 90 S.Ct. 827. These principles apply with equal force to representatives seeking to litigate on behalf of a class. Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1969); Kaufman v. Dreyfus Fund, 434 F.2d 727 (3rd Cir. 1970).

The defendant strenuously urges Law has not alleged a sufficient personal stake in the outcome of the litigation to acquire standing to prosecute the instant action. It argues Law has suffered no harm because he has been accommodated in other CHILD Foundation facilities in the past and there is no allegation that he will be deprived of future use of Foundation facilities by virtue of the defendant's refusal to convey the property in question. Law replies to defendant's argument that he will be deprived of the convenience of a YMCA facility immediately adjacent to the proposed Foundation home.

■ The Court perceives a different type of harm. The gravamen of the harm is not the deprivation of use of one Foundation facility; rather, it is the denial to Law and the members of the class he purports to represent of the use of a facility which would allegedly be available if it were to be utilized solely by whites.

■ Law's allegation of actual harm is but one aspect of the standing doctrine. Harm, however serious, is not sufficient unless he can show that it constitutes an invasion of an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. at 153, 90 S.Ct. at 830; Comprehensive Group Health Services Bd. of Dir. v. Temple University, 363 F.Supp. 1069, 1092 (E.D.Pa.1973).[4] Unlike the requirement of actual harm, this requirement is not constitutionally mandated, but is a rule of internal self-constraint imposed by the Court. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. at 153, 90 S.Ct. 827.

The issue presented by the second element of standing is whether the harm to Law flowing from the denial to him of the use of the facility because of the alleged racially motivated discrimination policy of defendant is a deprivation of a civil right conferred upon Law by 42 U.S.C. § 1982. The mere posing of the issue demonstrates the inquiry pivotal to a standing ruling is closely allied although not identical[5] to the basic legal question underlying Law's cause of action, viz., whether on the facts in the record Law has a cause of action within the meaning of 42 U.S.C. § 1982.

■ The Court declines to determine at this time the issue of Law's standing

---

4. This test represents a substantial liberalization of the law of standing; older decisions, ostensibly rejected by *Data Processing*, speak of the necessity of invasion of a "legally-protected interest." Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1960); Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1930). *See generally* Hart & Wechsler, The Federal Courts and The Federal System 151–54 (P. Bator et al., eds, 2d ed. 1973).

5. In determining the aspect of standing under *discussion*, the Court would consider whether Law "arguably" has a cause of action under 42 U.S.C. § 1982 as distinguished from whether he has a cause of action under 42 U.S.C. § 1982.

to sue Woodlawn Trustees. Having been raised on a motion to determine class, Fed.R.Civ.P. 23(c)(1), the issue is not squarely before the Court, *cf.* Plum Tree, Inc. v. Rouse Company, Inc., 58 F.R.D. 373 (E.D.Pa.1972), with the consequence that the record is not necessarily fully developed.[6]

■ Further, the issue can be placed in much sharper focus by way of a motion pursuant to Fed.R.Civ.P. 12(b)(6) or 56. Whether federal jurisdiction exists and whether the plaintiff has stated a cause of action upon which relief may be granted are entirely separable issues; failure to state a cause of action requires a judgment against the plaintiff on the merits, not a dismissal for want of jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *see also* Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25–26, 33 S.Ct. 410, 57 L.Ed. 716 (1913).

■ Aside from the jurisdictional issues raised by defendant, it has urged that the Court should not entertain an order permitting the instant action to proceed as a class action because a more efficient means of litigation exists. DuPont, the prime plaintiff in this action, can be expected to raise all of the claims and defenses which the putative class would have been entitled to raise. If duPont prevails on her § 1982 claim, she will be presumably entitled to the residence pursuant to decree of this Court and will be able to pursue the same remedies which the plaintiff class might have secured under its § 1982 claim. If duPont should be vulnerable to an appropriate defense motion on her 42 U.S.C. § 1982 claim, the individual plaintiff, Law, remains in the law suit asserting 28 U.S.C. § 1982 claims which

would secure to the putative class the same claims, defenses and remedies, if any, which it would have. If, on the other hand, Law should be vulnerable to an attack of his § 1982 claim, his cause of action is subject to dismissal. Concededly, the class will then be without a remedy. However, if Law's claims are representative of those of the class, its members could not prevail under any circumstances. It necessarily follows the class action aspect of this litigation is superfluous. *See* Cousins v. City Council of City of Chicago, 466 F.2d 830, 845 (7th Cir.), *cert. denied,* 409 U. S. 893, 93 S.Ct. 85, 34 L.Ed.2d 151 (1972); Ihrke v. Northern States Power Company, 459 F.2d 566, 572 (8th Cir. 1972); Bailey v. Patterson, 323 F.2d 201, 206 (5th Cir. 1963).

Accordingly, the defendant's motion for determination that the instant litigation should not proceed as a class action is granted.

Submit order on notice within 10 days.

---

6. Obvious examples would be plaintiff's desire to have the Dell'Olio Affidavit considered and defendant's probable inclination to show of record there were no business dealings of any nature between Law and defendant.