William A. YEARSLEY, on behalf of himself and all other persons similarly situated

v.

SCRANTON HOUSING AUTHORITY; Paul J. Cusick, Individually and in his capacity as Executive Director of the Scranton Housing Authority; Their Agents, Employees, Successors in Office, and All Persons Acting in Concert or Cooperation with them or at their direction or under their control.

No. 77–1010 CIVIL.

United States District Court, M. D. Pennsylvania.

Nov. 8, 1979.

O. Randolph Bragg, David E. Heisler, Patrick J. O'Dea, Northern Pennsylvania Legal Services, Scranton, Pa., for plaintiff.

Carlon M. O'Malley, Jr., Scranton, Pa., Leo M. McCormick, Paul A. Barrett, Nogi, O'Malley & Harris, Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### I. *Facts*

Plaintiff William A. Yearsley has resided in the city of Scranton since March 17,

1977.[1] Defendant Scranton Housing Authority ("S.H.A.") is a public corporation formed to build, operate, and maintain living accommodations under the terms of the United States Housing Act of 1937, 42 U.S.C. § 1437, et seq. S.H.A. maintains the following policy in apportioning vacancies among eligible applicants:

> This authority will give preference in the selection of tenants to applicants who reside and/or have been residents of the City of Scranton for a minimum period of one (1) year, except in the event this Authority has units available and no Scranton residents, then second preference will be given to residents of Lackawanna County who have been residents or resided there for a minimum of one (1) year.[2]

Yearsley submitted to S.H.A. an application for low-income housing on the same day he established residency in Scranton. Four days later, the plaintiff received a letter stating that he had been found eligible for "a dwelling with efficiency bedrooms." The notification, however, also explained that there was "no way of knowing the housing needs of future applicants who may be in a category of preference that supersedes yours, and whose eligibility may change your position on the waiting list."[3] Thus, Yearsley was forced to wait for housing without understanding exactly where he stood in the order of priorities. Until March 1978, any yearlong resident of Scranton who was considered eligible for S.H.A. housing automatically received a more desirable spot on the waiting list for vacancies than that occupied by the plaintiff.

In this suit, brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, Yearsley challenges the legality of the S.H.A. policy which creates a priority in favor of persons who have maintained city residence for one year or more. His rationale is twofold. Initially, the plaintiff contends that the procedure violates the regulations promulgated by the Agency of Housing and Urban Development ("H.U.D."). Second, he asserts that the preference amounts to an unconstitutional infringement of the fundamental right to travel. Presently before the Court are motions by Yearsley to certify the suit as a class action under Federal Rule of Civil Procedure 23(b)(2) and to grant summary judgment in favor of the plaintiff.

## II. Class Certification and Mootness

■ The Rule 23 motion must be considered in conjunction with the question of mootness, because under the facts of the instant case the two issues dovetail. On March 15, 1978, approximately one year after his move to Scranton, Yearsley obtained low-income housing with payment assistance furnished by S.H.A. Furthermore, even if he had not received such accommodations, any adverse effect of the challenged policy would have terminated long ago. The defendants, therefore, imply that the action should be dismissed as moot. The plaintiff has attempted to avoid such a harsh result by seeking class certification. Upon consideration of the issue, this Court shall grant the Rule 23 motion under the principles announced in *Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228 (M.D.Pa.1978).

The normal requirements for class certification outlined in Rule 23(a) are certainly present in the instant action. First, joinder of all parties in the same "class" as Yearsley would be "impracticable" if not impossible. The defendant admits that a substantial number of S.H.A. applicants otherwise eligible for low-income housing have not resided in the city for one year and thus are

---

1. The plaintiff, who is blind, was formerly a self-employed vending stand operator. Yearsley said in his deposition that he had lived in Scranton from his birth, which appears to have been in 1916, until 1970. He claims to have worked in Wilkes-Barre, Harrisburg, and Philadelphia during the next seven years of his life. The plaintiff maintains that he always kept a mailing address in Scranton and constantly returned to the city every other week. Counsel, nevertheless, have stipulated to the March 17, 1977 date. (*See* Documents 35 and 36 of the Record.)

2. *See* Document 36 of the Record.

3. *See* Exhibit A appended to Document 5 of the Record.

placed in the lesser priority pool.[4] Furthermore, as in the *Lycoming* case, persons are constantly entering and leaving the relevant class creating an "apparent rapid turnover" of members. The list of genuinely interested plaintiffs can change on almost every given day. Joinder would be highly difficult no matter what the number of aggrieved applicants might be "at any particular moment." *Id.* at 232. Second, there is a major question of law common to the class; namely, the legality of the residency preference. Third, the plaintiff's twofold assault on S.H.A.'s policy is a typical claim among the lower priority applicants. *Dawes v. Philadelphia Gas Commission*, 421 F.Supp. 806, 813 (E.D.Pa.1976). Finally, this Court is satisfied that Yearsley will protect the interests of the class fairly and adequately.[5]

Once a suit has qualified for general class action status, it still must be examined for classification under Rule 23(b). Only litigation which meets this additional requirement can be certified as a class action. The plaintiff has moved that this case specifically be designated under Rule 23(b)(2) which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The test for this provision is that "the interests of the class members must be so like those of the individual representative that injustice will not result from their being bound by said judgment in the application of the principles of res judicata." *Martin v. Easton*

*Publishing Company*, 73 F.R.D. 678, 683 (E.D.Pa.1977).

Yearsley and those whom he would represent have an identical goal: to strike down the S.H.A. vacancy preference for yearlong residents. The issue is purely a question of law and factual distinctions among the applicants are irrelevant to the outcome. Rather than effecting an injustice, application of res judicata in this case would further the ends of judicial economy by resolving the controversy while avoiding piecemeal litigation. Accordingly, classification under Rule 23(b)(2) is appropriate.

Only one obstacle remains to favorable action on this motion. The defendants note that Yearsley's suit technically became moot before the Court had an opportunity to rule on the Rule 23 issue.[6] They rely on *Bradley v. Housing Authority of Kansas City, Missouri*, 512 F.2d 626, 628–29 (8th Cir. 1975) for the proposition that certification as a class action cannot at this point cure the mootness. This contention, however, is incorrect. Many cases have held in derogation of the *Bradley* rationale that under the appropriate circumstances application of Rule 23 may "relate back" to the time of the motion and eliminate the mootness problem according to the doctrine of *Sosna v. Iowa*, 419 U.S. 393, 397–403, 95 S.Ct. 553, 556–559, 42 L.Ed.2d 532 (1975). *See Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975); *DeBrown v. Trainor*, 598 F.2d 1069, 1071–72 (7th Cir. 1979); *Susman v. Lincoln American Corp.*, 587 F.2d 866, 869–871 (7th Cir. 1978); *Jones v. Diamond*, 519 F.2d 1090, 1097–99 (5th Cir. 1975); *Frost v. Weinber-*

---

4. The following figures are representative: (1) 1973: 94, (2) 1974: 83, (3) 1975: 95, (4) 1976: 115, and (5) 1977: 108. (*See* Document 19 of the Record.)

5. As stated in *Lycoming*, there is a two-pronged test employed in determining the adequacy of representation requirement: (1) access to legal counsel with sufficient qualifications and experience to handle the litigation, and (2) conformity of interests between the named litigant and the class. 79 F.R.D. at 233. Yearsley is represented by Northern Pennsylvania Legal Services, an organization whose attorneys have conducted the case with sufficient

diligence to demonstrate that the initial mandate is more than satisfied. Second, the record is devoid of any suggestion that the plaintiff has a conflict of interest with the other applicants in his class.

6. The plaintiff originally moved for class certification on February 24, 1978, a point at which he was still interested in the outcome. On the following September 27th, this Court dismissed the motion without prejudice pending completion of discovery. The motion was renewed on the subsequent November 17th.

ger, 515 F.2d 57, 62–65 (2d Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Tedeschi v. Blackwood*, 410 F.Supp. 34, 38–41 (D.Conn.1976); *Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. at 231–232. The real question before the Court is whether this case presents appropriate facts for the relation back principle.

This suit is controlled by *Lycoming*. The latter precedent found that Rule 23 certification should "relate back" when two factors are present: (1) a continual turnover of class members which renders the allegedly wrongful acts capable of repetition yet evading review, and (2) the probability that "there will be a constant existence of a class suffering the alleged deprivations." *Id.* Both of these conditions exist in the instant litigation. Accordingly, the plaintiff's motion for Rule 23(b)(2) certification shall be granted. This Court concludes that the case is not moot, and it shall proceed to the merits.

### III. *The Merits*

As previously stated, Yearsley has assaulted the residency preference on both regulatory and constitutional grounds. This case, however, can be decided solely on the former basis. Therefore, there will be no need to consider the fundamental right to travel question. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341–356, 56 S.Ct. 466, 480–487, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

▆ The parties have stipulated that the S.H.A. is subject to the Housing Act of 1937 and regulations promulgated thereunder. (*See* Document 36 of the Record.) According to 24 C.F.R. § 841.115(c)(5):

> (5) Requirements or preferences for those living in the jurisdiction of the PHA at the time of application are permissible subject to the following: No requirement of preference may be based upon the identity or location of the housing which is occupied or proposed to be occupied by the applicant *nor upon the length of time the applicant has resided*

> *in the jurisdiction*; applicants who are working or who have been notified that they are hired to work in the jurisdiction shall be treated as residents of the jurisdiction. [emphasis added]

The Court is unaware of any prior case which has interpreted this provision. Nevertheless, the plain language of the rule clearly demonstrates that the challenged S.H.A. policy contradicts the mandate of § 841.115(c). A H.U.D. regulation, validly issued, possesses legal effect comparable to that of a statute. *Gramercy Spire Tenants' Ass'n v. Harris*, 446 F.Supp. 814, 822 (S.D.N.Y.1977); *515 Associates v. City of Newark*, 424 F.Supp. 984, 992 (D.N.J.1977). Therefore, the S.H.A. residency preference on its face constitutes a violation of federal law.

▆ Two more issues require consideration before resolution of the case. The first is the validity of § 841.115(c). *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) concerned in part the constitutionality of H.U.D. rules requiring that low-income tenants receive a notice and hearing prior to eviction. The Supreme Court stated that the relevant test was whether the regulation was "reasonably related to the purposes of the enabling legislation." *Id.* at 280–81, 89 S.Ct. at 525. The *Thorpe* opinion also explained that a specific purpose of the Housing Act was "to provide 'a decent home and suitable living environment for every American family' that lacks the financial means of providing such a home without government aid."[7] On this rationale, the Court held that the eviction prerequisites were reasonably related to the pronounced objective. In the instant case, the H.U.D. provision under review prohibits S.H.A. from discriminating against Americans who require "a decent and suitable living environment" but simply have not resided in the jurisdiction for one year. Accordingly, § 841.115(c) is also "rationally related" to the Housing Act's underlying purpose.

---

7. Footnote omitted.

The final area of inquiry is standing to sue. It is necessary to determine if Yearsley is a proper plaintiff to seek enforcement of § 841.115(c). A body of relatively old precedent suggests that standing under the Housing Act is limited and that the federal government is the appropriate party to sue when its statutes or, presumably, regulations are violated. *Green Street Association v. Daley*, 373 F.2d 1, 7 (7th Cir. 1967); *Johnson v. Redevelopment Agency of City of Oakland*, 317 F.2d 872, 874–75 (9th Cir. 1963); *Harrison-Halsted Community Group, Inc.*, 310 F.2d 99, 103–106 (7th Cir. 1962); *Pittsburgh Hotels Ass'n, Inc. v. Urban Redevelopment Ass'n, Inc.*, 309 F.2d 186, 189–191 (3rd Cir. 1962), *cert. denied*, 372 U.S. 916, 83 S.Ct. 730, 9 L.Ed.2d 723 (1963). Subsequent case law, nonetheless, indicates that these holdings do not control the instant action even if they do retain some validity on their facts.

In *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court established a two-tiered test for standing. First, the plaintiff has the obligation to allege injury in fact caused by the challenged action. *Id.* at 152, 90 S.Ct. at 829. Second, "the interests sought to be protected by the complainant" must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 153, 90 S.Ct. at 830. Many cases have concluded that *Data Processing* applies to the Housing Act. *M. M. Crockin Co. v. Portsmouth Redevelopment & Housing Authority*, 437 F.2d 784, 787 (4th Cir. 1971); *"Toor" v. United States Department of "H.U.D."*, 406 F.Supp. 1024, 1030 (N.D. Cal.1973); *Comprehensive Group Health Services Board of Directors v. Temple University*, 363 F.Supp. 1069, 1092–93 (E.D.Pa. 1973). *See also Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920, 932–37 (2d Cir. 1968); *duPont v. Woodlawn Trustees, Incorporated*, 64 F.R.D. 16, 21 n.4 (D.Del.1974). Yearsley seeks to assert standing under the Housing Act's regulations. Since these rules are designed to further the Act's basic purposes and essentially have the same effect as a statute, this Court concludes that the *Data Processing* test is the proper framework for analysis.

The plaintiff has alleged injury in fact. The defendants have always admitted that the S.H.A. residency preference placed him at a disadvantage on the waiting list. Yearsley's interest in gaining access to low-income housing, moreover, undoubtedly falls within the zone protected by the Housing Act. It already has been noted that an explicit objective of the statute is to assist persons in the plaintiff's position to obtain decent and safe living accommodations. *Thorpe v. Housing Authority of City of Durham*, 393 U.S. at 281, 89 S.Ct. at 525. Accordingly, Yearsley has standing to sue under § 841.115(c)(5) and summary judgment will be granted in his favor.

On the matter of remedies, however, the Court will grant less than the plaintiff has requested. A permanent injunction shall be issued requiring abrogation of the S.H.A. preference for yearlong residents. Presumably, the plaintiff's request for attorney's fees is based on 42 U.S.C. § 1988, a statute which provides that such an award is discretionary. This Court is not prepared to make a determination until more argument is presented. Both sides must address the appropriateness of making any grant in this situation. The present record is not at all clear that recovery is proper in the instant litigation. The plaintiff, moreover, must provide the Court with the data necessary to calculate attorney's fees in the event that an award is made.[8] Each party shall submit its initial brief within fifteen days of the issuance of this Memorandum. Five additional days will be allowed for filing replies. Finally, it should be noted that the complaint also requests a series of reforms in S.H.A. procedure other than abolition of the challenged preference. These remedies appear irrelevant to the instant action and shall be denied.

8. *See Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1979); *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), and the cases cited therein.